FILED by _____ D.C.

**MAR 2 1 2014**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE: Alicia O. Valle

CASE NO: 9:13-cv-81203

ISABELLA RALSTON CHARNLEY
Citizen of the United States of America and Resident of Florida
Pro Se
V

THE TOWN OF SOUTH PALM BEACH FLORIDA;
MAURICE JACOBSON, in his individual and official capacity;
MARTIN MILLAR, in his individual and official capacity;
DONALD W. CLAYMAN in his individual and official capacity;
REX TAYLOR, in his individual and official capacity;
JANET K. WHIPPLE in her individual and official capacity;
JOSEPH M. FLAGELLO, in his individual and official capacity;
STELLA G. JORDAN, in her individual and official capacity;
ROBERT GOTTLIEB, in his individual and official capacity;
BONNIE FISCHER, in her individual and official capacity;
ROGER M. CRANE, Chief in his individual and official capacity;
CARL WEBB, Captain in his individual and official capacity;
MARK MCKIRCHY, Senior Patrol Officer in his individual and official capacity;
TRELA WHITE, in her individual capacity;
BRADLEY W BIGGS 12230 Forest Hill Blvd, Suite 11-0-1 Wellington, FL 33414
Address C/O Corbett & White, 1111 Hypoluxo Rd., Ste. 207 Lantana, FL 33462
LINDA DECARO in her individual capacity;
DECARO OWNER: 3586 La Playas Ct D1, Greenacres, 33463 Florida
Mailing Address: 106 S. Forecastle Drive, Little Egg Harbor, New Jersey 08087 1552
DECARO OWNER: Veveda LLC filed as a Florida Limited Liability in the State of Florida on
Tuesday, June 05, 2012
John & Jane does

Defendants

## **AMENDED COMPLAINT**

COMPLAINT DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

PLAINTIFF brings this suit pursuant to 42 U.S.C. §1983 seeking a declaratory judgment

declaring certain policies, practices and actions of the Town of South Palm Beach, and certain of

its individual officers and representatives, to be unconstitutional under the First, Fourth and

1

Fourteenth Amendments to the United States Constitution, and the corresponding provisions of the Florida Constitution. PLAINTIFF further seeks damages arising from those unconstitutional policies, practices and actions.

## JURISDICTION

This suit is brought pursuant to 42 U.S.C. §1983:Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C.§1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured the Constitution, and under 28 U.S.C. 1343 (4) to secure equitable relief for the protection of civil rights.

The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P. This Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

This Court is authorized to award damages for violation of PLAINTIFFS constitutional rights under 42 U.S.C. §1983.

This complaint seeks declaratory and injunctive relief to prevent violations of the PLAINTIFFS rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §1983 and 1988, specifically seeking redress for the deprivation under color of law state statute, ordinance, regulation, custom or usage or rights, privileges, and immunities secured by the

2

Constitution and laws of the United States. The right sought to be protected in this cause of action arise and are secured under First, Fourth and Fourteenth Amendments to the Constitution. This Court has supplemental jurisdiction over PLAINTIFF state law claims pursuant to 28 U.S.C. §1366.

PLAINTIFF has satisfied the notice requirements of §768.28(6)Fla. Stat. by notifying the Mayor of TOWN SOUTH OF PALM BEACH by letter dated June 19, 2013 in regard to claims arising out of incidents that occurred.

The Town of South Palm Beach received the notice letter pertaining to this case on June 20, 2013.

<u>VENUE</u>

Venue is proper in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida Division, since the policies and acts complained of are those of the TOWN OF SOUTH PALM BEACH, which is within the district and geographical area assigned to the West Palm Beach Division.

**<u>ILLEGAL APPROVAL OF ORDINANCE 235 WITHOUT</u>**

**<u>REFERENUM ROBBING PLAINTIFF OF HER "DUE PROCESS"</u>**

**<u>RIGHT TO VOTE. ORDINACE 235 WHICH ALSO CLEARLY</u>**

**<u>VIOLATES THE TOWN CHARTER</u>**

1) The qualified electors of the TOWN of South Palm Beach voted in by Referendum the TOWN Charter, <u>the TOWNS Constitution</u> on March 14, 2000. No referendum vote since then has been taken to change any wording in the TOWN Charter how appointed boards are appointed or removed or to change of our Form of Government. Our TOWN Charter

is controlling and can only be superseded by U.S. Constitution, Florida Constitution, State Statutes or the Courts.

2) All important TOWN Council and TOWN Manager expectations are embedded in the TOWN Charter. **EXHIBIT: ONE TOWN CHARTER**.

3) Ordinances constitute the subject matter of municipal law. The power of municipal governments to enact ordinances is derived from the State Constitution or Statutes or through the legislative grant of a municipal Charter. The Charter in large part dictates how much power elected officials have to regulate actions within the municipality. Municipalities that have been granted "home rule" Charters by the legislature have the most authority to act. <u>If, however, a municipality enacts an ordinance that exceeds its Charter or is in conflict with State or Federal law, the ordinance can be challenged in court and ruled void.</u>

4) Florida Statute 166.041- Procedures for adoption of ordinances and resolutions.

5) Ordinance" means an official legislative action of a governing body, which action is a regulation of a general and <u>permanent</u> nature and enforceable as a local law.

6) PLAINTIFF did not discover the serious problems with regards to Ordinance 235 until approximately late 2011 early 2012 when she began seriously researching the TOWN Charter and the happenings in the TOWN.

7) The beginning of the very serious violations of the TOWNS Charter and the illegal change in our **Form of Government** without a referendum happened under the watch of Mayor JACOBSON.  JACOBSON at that time had been involved with the TOWNS Government for 16 years. JACOBSON was sworn in as Mayor of the TOWN on March 22, 2005.

4

### ADVISORY LEGAL OPINION –AGO-77-135 – EXHIBIT TWO

8) QUESTION: What type of change is contemplated by the term **"any change in the form of government"** as that term is used in s. 166.021(4), F.S

   1) SUMMARY: The phrase "any change in the form of government" in 166.021(4), F.S., contemplates a change in the allocation of the basic policymaking and administrative functions of municipal government (as from a strong mayor form to a city manager form). Amendments to municipal Charter provisions adopted prior to July 1, 1973, the effective date of the Municipal Home Rule Powers Act, may be made by ordinance if such changes do not affect the basic organizational and administrative structure of the municipality's government (and if such changes do not fall within any of the other excluded areas such as rights of municipal employees set forth in s. 166.021[4].) Charter provisions adopted or readopted subsequent to the effective date of the Municipal Home Rule Powers Act may be amended only pursuant to s. 166.031, F. S

9) 7. At a TOWN Hall Meeting on held February 28, 2006 WHITE informed the council and attending residents "that Ordinance 235 was house-keeping in nature in order to bring them all in consistency"

10) This proved to be a blatantly untrue statement and PLAINITFF claims that Ordinance 235 went way over any type of "house-keeping" of the Towns Appointed Boards, Committees etc. PLAINITFF believes that in fact it changed the TOWNS Form of Government and that from the time it passed all appointed boards in the TOWN were illegally constituted.

11) On March 28, 2006 Jacobson was the Mayor of a TOWN whose Form of Government was Council/Town Manager. This Form of Government consists of a weak Mayor/Council with only legislative powers and a strong TOWN Manager who had all administrative powers for the day to day running of the TOWN.

12) JACOBSON was on the Council and present at the TOWN Hall Meetings on 04/24/2001, 05/28/2002 and 3/23/04, when all of the TOWN Board appointments were done with strict compliance to the NEW TOWN 2000 Charter Provisions and Form of Government so there is no excuse for JACOBSON to believe that Ordinance 235 was legal.

13) Other DEFENDANTS where appointed or elected to the TOWN council on the following dates: MILLAR 3/22/05; GOTLEIB 3/22/05; FLAGELLO 3/25/08; CLAYMAN 10/28/08; JORDAN 3/23/10; FISCHER 3/22/11. Every one of the above DEFENDANTS joined the TOWN Council when it was a Council/ Manager Form of Government, but none of them adhered to the Charter Provisions that clearly States what their limits were when it came to appointive boards. **EXHIBITONE: ARTICLE TWO. THE TOWN COUNCIL**

**14)** On June 28, 2005 the Town hired Rex TAYLOR as the new TOWN Manager of a Charter Town with a weak Mayor/ Council and a strong Manager Form of Government. The very least the residents of our TOWN should expect from TAYLOR was that he understood exactly what his job duties were as set out in the TOWN Charter and that he adhered to them.

15) At the TOWN Hall Meeting held on November 22, 2005 Trela WHITE and Bradley BIGGS representing the firm of Corbett & White were hired as the TOWNS attorneys. WHITE and BIGGS attended their first Town Hall Meeting as TOWN attorneys on

December 20, 2005. The very least the residents of our TOWN should expect from WHITE & BIGGS, who are Attorneys for a Charter TOWN, is that they would be aware that it is well established in law that the words used in our TOWN Charter should be given their usual and ordinary meaning." Carter v. City of Pawtucket, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975).

16) At the time of hiring WHITE and BIGGS produced a list of their Florida Town/City and Village clients. This list included Towns with both types of Form of Government, so they should have easily been able to distinguish between a strong Mayor and a strong Manager Form of Government.

17) Town Attorney WHITE is on the staff of the Florida League of Cities. She is noted as - Trela White, Esq. League Counsel Corbett, White & Davis, P.A.

18) **Florida League of Cities 2013 Manual States:**

19) Section 2-2: The Municipal Charter - A. SIGNIFICANCE OF THE CHARTER

20) The municipal Charter is an essential and fundamental element of every Florida municipality. No Municipal government may be created without a proposed Charter, and no municipal government may exist without a Charter. In addition, the municipal Charter is vital to the democratic and effective functioning of a municipal Government. It must contain basic provisions for the organization of municipal government. A good Charter is one which presents a concise and workable legal framework for the government of the municipality.

21) In addition, says the National Civic League, a good Charter is one which "sets before the citizens a clear picture of their own powers and responsibilities and before the officials and employees a Statement of their duties and mutual interrelations." The adoption of a

good Charter, says the League, "is an affirmation by the citizens that they mean to have good government and is the legal framework within which such government can be run and the more easily maintained." A municipal Charter must originate within the community and must be formally approved by a majority of the registered voters of the community. The Charter is, in a sense, a contact among the residents of the community regarding the extent and form of government which they desire.

22) At a TOWN Hall Meeting held on January 10, 2006 Attorney Trela WHITE states "the TOWN was governed by its Charter"

23) On January 25, 2011 Town Attorney BIGGS explained that a change in the Charter had to be done by referendum. BIGGS and WHITE should have known that when they accepted their jobs in 2005.

24) What the TOWN is supposed to have is a separation of powers, between executive and legislative powers.

25) Yet at a TOWN Hall meeting held on March 28, 2006 Ordinance 235, which was written and approved by WHITE and BIGGS was passed and made the law of the TOWN.

26) It is not inherently illegal for a municipality to pass ordinances without presenting them to the voters; but Ordinance 235 changed the TOWNS Form of Government and changed the law of the TOWN regarding appointed boards. TOWN Ordinance 235 as written changes the provisions of the TOWN Charter of how all future TOWN appointments to Boards where chosen, and by whom. Ordinance 235 by giving the right to appoint all board members to the Mayor/Council Members without input from the TOWN Manager violated the TOWN Charter.

27) The TOWN by changing our Form of Government and how the TOWNS appointed Boards etc. were chosen without it being put to a referendum to enable PLAINTIFF and other registered voters a chance to approve or disapprove of Ordinance 235 deprived PLAINITFF and other registered voters in the TOWN "due process rights", including the right to vote or ratify "the change or ordinance".

28) The changes made to our TOWN Charter and Form of Government violates Florida Statute 166.021:

29) **166.021(4) - Powers**

30) **However,** nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election except for the selection of election dates and qualifying periods for candidates and for changes in terms of office necessitated by such changes in election dates, the distribution of powers among elected officers, **matters prescribed by the charter relating to appointive boards, any change in the form of government,** or any rights of municipal employees, **without approval by referendum of the electors as provided in s. 166.031.** Any other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed.

31) **ADVISORY LEGAL OPINION –AGO-77-135 – EXHIBIT TWO**

32) QUESTION: What type of change is contemplated by the term "any change in the form of government" as that term is used in s. 166.021(4), F.S

33) SUMMARY: The phrase "any change in the form of government" in 166.021(4), F.S.,
contemplates a change in the allocation of the basic policymaking and administrative
functions of municipal government (as from a strong mayor form to a city manager
form). Amendments to municipal Charter provisions adopted prior to July 1, 1973, the
effective date of the Municipal Home Rule Powers Act, may be made by ordinance if
such changes do not affect the basic organizational and administrative structure of the
municipality's government (and if such changes do not fall within any of the other
excluded areas such as rights of municipal employees set forth in s. 166.021[4].) Charter
provisions adopted or readopted subsequent to the effective date of the Municipal Home
Rule Powers Act may be amended only pursuant to s. 166.031, F. S

34) Attending that Meeting and voting approval of this Ordinance 235 were; JACOBSON,
MILLAR, GOTLIEB TAYLOR.

35) DEFENDANTS JACOBSON, CLAYMAN, MILLAR, GOTLIEB, FLAGELLO,
JORDAN, FISCHER worked under the illegal powers given to them by of Ordinance 235
and each of them all appointed Board Member after 2006.

36) At TOWN Hall Meetings held on 4/25/2006; 4/24/07; 4/22/08; 3/25/08; 4/28/09; 4/27/10;
6/22/10; 4/25/11; 4/24/12; 4/23/13 appointees to Boards, and Committees were appointed
in violation of the Town Charter and Florida Statutes 166.021 (4) and 166.031. REX
TAYLOR or his representative and either WHITE or BIGGS were in attendance and did
nothing to stop these violations; sometime all three were there.

37) **TOWN CHARTER EXHIBIT ONE: ARTICLE TWO. THE TOWN COUNCIL**

38) **§ 2-8. Officers approved or appointed by the council.**

39) **(e)** *Boards and committees:*

40) Appointment—Every member of every board and committee of the Town, whether advisory or quasi-judicial, **shall** be recommended by the Town Manager, and **shall** be appointed by the Town Council.

41) PLAINTIFF believes that the word **shall** make's the provisions in the Charter mandatory and that there is nothing ambiguous about the above provision in the Charter which makes it perfectly clear that the TOWN Council has no power whatsoever to appoint or deny appointment of any board or committee members, in fact it confirms that the TOWN Council Members do not have the power to even question the TOWN Manager with regards to his/her choice of appointees and that they shall appoint them whether they like them of not.

42) There are many other Provisions in our Charter that confirm that the neither Mayor nor Council members have any authority to nominate or remove Board or Committee Members.

43) PLAINTIFF is aware that there are many cases where the Charter violations were not known, but that cannot be said about the DEFENDANTS in this case. She was constantly requesting answers by e-mail and at many TOWN Hall Meetings regarding what she thought were very serious violations of our Charter, but never received one answer from anybody.

44) PLAINTIFF'S first e-mails to the TOWN stating that the TOWN was being run directly in a way that contravened the express mandates contained in the TOWN Charter started as early as June 12, 2010 when she informed TAYLOR and WHIPPLE that the Mandatory Citizens Advisory Council had not been seated in the TOWN since 2003.

45) PLAINITFF had questioned the TOWN many times about us not having a Citizens Advisory Council.

46) As late as a TOWN Hall Meeting held on November 23, 2010, PLAINITFF discussed the lack of communication concerning her emails to Town staff. She inquired regarding a Citizens' Advisory Council not sitting in the TOWN. Ms. Ralston- Charnley addressed issues regarding Planning Board members. Mayor Millar asked Town Manager Taylor if he was responsible for keeping the charter enforced. TOWN Manager TAYLOR responded that he was doing research and would report back with the results.

47) Even though PLAINITFF brought up the problem about Boards, Committees etc. having not gone through this Council as late as November 23, 2010 the illegally constituted Planning Board was allowed to sit on December 9, 2010 and January 18, 2011 and recommend that the redevelopment of the Oceanfront Inn be denied. The denial was upheld by the TOWN Council.

48) On January 19, 2011 PLAINITFF sent an e-mail to WHITE complaining about many problems that she was having with the town, this included the fact that the Mandatory Citizens Advisory Council was not seated and questioned her whether or not any of the Boards/Committees were even valid; as usual PLAINTIFF received no reply

49) Within days after WHITE had received PLAINITFFS e-mail and months after she had first informed the defendants that this Council did not exist, at last a new one was appointed on January 25, 2011.

50) This was one week after DEFENDANTS had allowed an illegally constituted Planning Board to vote against any redevelopment of the TOWNS only Commercial Site, therefore stopping any chance of it being redeveloped as a new hotel and therefore taking away any

chance of expanding the tax revenue which could have lowered the TOWNS

unbelievable high taxes.

51) The illegally constituted Planning Board also robbed the TOWN, the owners of the

Oceanfront Inn their due process under the law for a fair and unbiased chance to

redevelop the only commercial site in TOWN.

52) PLAINTIFF is aware that there are many cases where the Charter violations were not

known, but that cannot be said about the DEFENDANTS in this case. She was constantly

requesting answers by e-mail and at many TOWN Hall Meetings regarding what she

thought were very serious violations of our Charter.

53) The process by which Ordinance 235 was passed as a law of the TOWN is preempted by

and in conflict with Florida law, and is, therefore, invalid and that all actions taken by the

DEFENDANTS and illegally constituted Boards /Committee Members under the power

of this Ordinance were "arbitrary, capricious, ultra vires and of no effect whatsoever".

54) PLAINTIFF claims the TOWN Council voted on and approved Ordinance 235 without a

referendum with the sole intent of taking over the duties of the TOWN Manager and

therefore have complete control over the Government of the TOWN.

55) PLAINTIFF claims that because Town Attorneys BIGGS, WHITE compiled and

presented Ordinance 235 to the Town Government that they are intertwined in violating

her rights to vote to change our TOWNS Form of Government.

56) PLAINTIFF claims that the DEFENDANTS abandoned their sworn duty to the TOWN

residents when they worked and conspired to deny PLAINTIFF and others their right to

vote on the change in government and changes in how the TOWNS appointed boards

were appointed and removed.

57) For years the nefarious action of the TOWN Government, Employees and Independent Contracts WHITE and BIGGS willfully and with vicious intent abused the rights of the PLAINITFF, TOWN residents and the Paloka family the owners of the Palm Beach Oceanfront Inn. The above violations occurred with the direct knowledge and involvement of the DEFENDANTS.

58) PLAINTIFF believes that because of the multiple violations of the TOWN Charter and Ordinance 235 the DEFENDANTS abused their powers for years and ran the TOWN as if it were their own little "fiefdom"

59) PLAINTIFF afforded DEFENDANTS unlimited opportunities to correct their behavior. PLAINTIFF claims that the orderly, efficient and fair operation of government requires the intelligent participation of individual residents exercising their rights so as to avoid any unlawful sweeping changes to the TOWN Charter because of the exercise of individual prerogatives.

## VIOLATIONS OF PLAINTIFFS RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND VIOLATION OF THE CONSTITUTION OF FLORIDA

60) A continuing controversy has arisen between the PLAINTIFF and parties concerning her rights to free speech on matters of public and political concern. PLAINTIFF has had her rights to freedom of speech denied solely on the content of her speech when speaking before the TOWN Council. PLAINTIFF has a right to bring to the attention of her fellow citizens what she believes are wrongdoing and improper policies of the TOWNS government and its officials.

61) On **SEPTEMBER 1, 2009** PLAINTIFF attends a Budget Meeting and wishes to discuss the serious problems that she had had with the TOWN Accountant. Mayor Millar interrupts her and speaks to Attorney Biggs: <u>Are we timing this - no time limits are made.</u>

62) Mayor MILLAR leaves the room and gives the gavel to then Vice Mayor CLAYMAN. PLAINTIFF complains about the competency of the TOWN Accountant. Almost immediately CLAYMAN gavels her at least five times and continues a vicious, unnecessary attack on PLAINTIFF. CLAYMAN then instructs CRANE to remove her. By giving these instructions to move me CLAYMAN is violating the TOWN Charter because has no authority to give orders to CRANE)

63) PLAINITIFF questions why she should be removed for telling the truth.

64) Council Member JORDAN States "You are attacking an individual"

65) PLAINITFF States "I am allowed to say what the truth is; now you don't like it but I will be fighting to say the truth all the time. CLAYMAN: You have 30 seconds. CLAYMAN Gavel, Gavel your time is up; <u>the 30 seconds were not up</u>. PLAINITFF asks CLAYMAN "What are you scared of?" CLAYMAN Gavel! Gavel! Gavel! your time is up. PLAINTIFF "It's empty". <u>CLAYMAN to Chief of Police CRANE</u> Remove this lady from the hall.

66) PLAINITFF sits down because she does not want to be arrested.

67) CLAYMAN was so angry, abusive and aggressive towards PLAINTIFF that she thought it quite possible that he may leave is seat and physically abuse her; CLAYMANS hate for PLAINITFF had completely taken him over and he was totally out of control and this can be clearly seen on a video that PLAINITFF has of this incident.

68) When CLAYMAN gave instructions to CRANE to remove PLAINTIFF in violation of our Charter, sitting immediately to his right was TAYLOR; As TOWN Manager TAYLOR was the only one in the room who had the authority to give instructions to CRANE.

69) Directly behind CLAYMAN was TOWN Attorney BIGGS, who at no time attempted to stop CLAYMAN giving instructions to CRANE in violation of our TOWN Charter.

70) **NOVEMBER 23, 2010** PLAINTIFF: Isabella: May I request I am not interrupted I would like to ask Town Manager some questions.

71) **Attorney BIGGS**: You cannot speak directly to an employee.

72) PLAINTIFF: There is lack of communication between the Town Clerk and Town Manager- **BIGGS: Interrupts Plaintiff again.**

73) PLAINTIFF asks more questions about the Mandatory Citizens Advisory Council. **BIGGS** answers: But quite honestly I am responding to her question when I don't need to at this meeting. **JORDAN: Right –right.**

74) BIGGS has no problem giving detailed answers to other residents but when it comes to PLAINTIFFS very serious and legitimate questions he treats her in his usual arrogant, condescending and ongoing incompetent manner.

75) **ON DECEMBER 9, 2010** at a Planning Board Meeting PLAINTIFF wanted to question Planning Board Member Deborah Robinson regarding her violations of Florida Statute 286.0115 and TOWN Resolution 233, both of these documents cover ex-parte conversations of TOWN Officials. Every Official has to disclose at TOWN Hall Meetings all ex-parte meetings that they had been involved in since the previous meeting.

76) PLAINTIFF had just discovered that Planning Board Member Robinson was not only having ex-parte e-mails with residents but that she was the leading light to do everything in her power to make sure that under no circumstances would the redevelopment of the Palm Beach Ocean Front Inn be permitted; she lived next door to the Inn.

77) In an e-mail dated June 26, 2009 Robinson gives instructions to residents to do fundraising; to draft a petition against the redevelopment; invite 20 residents to write letters to the PBP, Palm Beach Daily News and the Shiny Sheet on the subject of how bad this would be for the TOWN- to focus on negative economic impact on the Town; recruit Town folks to picket the next meeting. She is allowed to do this, but she is not allowed to not disclose her involvement in such acts.

78) At this Meeting PLAINTIFF was abused by Michael Nevard Chairman of the Planning Board, shouted at, abused and intimidated by the audience by what could only be describe as "mob behavior" towards her. Nothing was said about this behavior and nobody was removed from the hall or threatened with arrest in violation of the TOWN Decorum Statement

79) On a video that PLAINITFF has of that night you can actually see TAYLOR smiling encouragement to the mob. Later in the meeting TAYLOR has PLAINTIFF removed from the meeting for speaking from the audience.

80) **DECEMBER 15, 2010** PLAINTIFF attended a TOWN Hall Meeting and at the time for Public Comments she stood and made a Statement regarding the appointment of FLAGELLO as TOWNS Vice Mayor. She was immediately gaveled and intimidated by CLAYMAN stating "I will not listen to derogatory against anybody" She explains that this was her free speech and that it was called the First Amendment and that he again was

17

stopping her from her rights. CLAYMAN gavels her and tells her her three minutes were running and time would not be taken off because he was interrupting her. He asks BIGGS for an opinion. PLAINTIFF was then subjected to a lecture from BIGGS with regards to her freedom of speech rights. He informed her "the first amendment does not give you unfettered right to say anything in this forum".

81) What had PLAINTIFF said up until this point that had so angered CLAYMAN and BIGGS to tell her she had no right to say it? She Stated **"First I would like to say that I am appalled and disgusted by the fact that Councilor Merbler was not offered the Vice Mayor position. He has worked tirelessly for almost two years for this TOWN. Mr. Flagello left the Town Council" gavel, gavel, gavel gavel!**

82) At the same meeting PLAINTIFF attempts to get an answer as to why JORDAN had presented TOWN residents with petitions which contained a serious false statement. She had not addressed JORDAN personally. She was immediately gaveled and gaveled and interrupted again by CLAYMAN he tells her "I won't allow that" "I will not allow any derogatory remarks about the members of the council". Apparently PLAINTIFF questioning a true fact is considered derogatory by CLAYMAN and he believes he has the total control over what she is allowed to say. JORDAN was fined by the Department of Elections because of these false Statements. JORDAN can be seen on the video mocking PLAINTIFF during her comments.

83) The intimidation and constant interruption by CLAYMAN and BIGGS were because of the content of her speech. Although PLAINITFF was constantly gaveled and intimidated by CLAYMAN and BIGGS she at all times acted in an orderly manner. This incident can be seen on a video that PLAINITFF has.

84) **JANUARY 25, 2011** CLAYMAN reads Decorum Rule 10.

85) PLAINTIFF who had been severely abused at the last two TOWN Hall Meetings held on December 9, 2010 and December 15, 2010 was at this time in a very anxious and fragile state and did not want to go through the stress of actually having to physically take part in the Public Comment Section that night just to be abused again.

86) PLAINTIFF was denied her request for her letter to be read by CLAYMAN in the Correspondence Section; they said that because she was in the audience she had to read it.

87) CLAYMANS Statement that PLAINTIFF had to read it herself because she was in the audience was very disturbing to PLAINITFF because at the Planning Board Meeting on December 9, 2010 a comment was read by Michael Nevard and he stated that the resident was in the audience but did not want to read it herself.

88) Although PLAINTIFF was very stressed and anxious she had no intention of not getting her thoughts out into the open. PLAINTIFF goes to the podium and complains with regards to her having been forced to read her letter

89) PLAINTIFF States she was not expecting to read this. CLAYMAN: You've got three minutes. PLAINTIFF I need my glasses.

90) CLAYMAN: It continues from the minute you got up here.

91) PLAINTIFF No it doesn't

92) CLAYMAN You have got three minutes.

93) PLAINTIFF asks CRANE a question CRANE does not answer her. BIGGS States no answer.

94) TOWN Hall Meeting **OCTOBER 25, 2011:** PLAINTIFF chose to speak during the period of the meeting allocated for Public Comments. She had spoken on the matter of the Citizens Advisory Council and because her three minutes were up she requested, as per her right, to speak on another agenda item; she was not allowed to do this. CLAYMAN admonished PLAINTIFF and obnoxiously gaveled her and tried to silence her. CLAYMAN began the gaveling as soon as she said "the Mayor has no power to appoint or veto". She pointed out that she had the right to speak on another item on the agenda; she was completely ignored and further harassed and continuously gaveled by CLAYMAN and again denied her rights under our Decorum Statement. PLAINTIFF stood up for her rights and CLAYMAN continued gaveling her and instructed CRANE to remove her for the TOWN Hall. CLAYMAN giving CRANE instructions to remove her is a serious violation of the TOWNS Charter. This was the second time CLAYMAN had given CRANE instructions to remove her from the TOWN Hall Meeting. TAYLOR condoned the illegal actions of his subordinate CRANE and the interference with his administration of the TOWN by CLAYMAN; BIGGS again just sat there and said nothing.  There was nothing to indicate that her further intended speech at the Council Meeting would be in any way threatening, or was somehow a "threat" to public safety; absolutely nothing in reality and fact supports their "malicious insinuations".

CLAYMAN'S action was not content neutral, and therefore was not merely an acceptable time, place, and manner regulation. She had done nothing wrong; she did not use profane language or threaten anybody with violence. She was standing up for her rights as an American Citizen. What was the worst thing she had said after she was abused and intimidated? **"you are so ignorant of our Charter it is almost criminal and**

**I am forced to go and take legal advice, because you are corrupt, ignorant of our Charter and this Town has been taken over by you people"**

95) PLAINTIFF claims that her actions and words were nowhere near to any type of threat or fighting words and certainly there were no illegal actions on her part to validate a threat of arrest. CLAYMAN and CRANES aggravated harassment of her communication that caused them "anger or alarm" violates the First Amendment because it potentially covers protected and nonviolent speech and certainly violates her First Amendment rights under the U.S. Constitution to free speech, assembly, and to petition government officials. She was standing up for her right to question the Government of the TOWN of South Palm Beach regarding what she thought were ongoing violations of the TOWN Charter. As per our Charter the final policymaking authority as to removing PLAINTIFF from the Meeting is TAYLOR. Although the TOWN Hall Meeting is run by Roberts Rule of Order, all specific provisions in our Charter supersede Roberts Rule of Order.

96) CRANE made his way to the front while stating to CLAYMAN "give me instructions Mayor and I will arrest her for trespassing". He was asking for instructions from the Mayor who has no right to give him instructions; CRANE had been with the TOWN for 25 years and had sworn in his oath to defend our Charter. PLAINITFF had done nothing wrong; she made no threatening or aggressive act of any kind, she did not use profane language, never moved from the dais or threatened anybody with violence.

97) The meeting was not disrupted by PLAINTIFF but by the outrageous behavior on CLAYMANS and CRANES part which was taken with the sole purpose of denying her her free speech rights whether she was right or wrong they didn't care and neither did any of the other DEFENDANTS sitting at the dais. The threat of arrest was an intentional

and calculated action by CRANE to harass her and to punish her for the exercise of her constitutional rights. No reasonable police officer or TOWN official could have believed that there was any probable cause or other basis under law to threaten to arrest her for the perfectly legal act of attending and participating in a public hearing before the TOWN Council. There was no probable cause to arrest her for any crime. The threat of arrest by CRANE was done with continuing malice against her and in an effort to stifle her speech and to interfere with the exercise of her constitutional rights, all in furtherance of the TOWNS policy to deprive her of her constitutional rights through harassment and public ridicule.

98) By CLAYMAN and CRANES conscious and reckless disregard of the consequences of their acts shows that they clearly had a deliberate indifference about whatever PLAINTIFF was saying about her constitutional right to freedom of speech, petitioning, and effecting government.

99) It can be seen on the video that JORDAN nods in agreement when PLAINTIFF said she was allowed to speak for three minutes on each agenda item and yet she did nothing to protect her from the abuse under the hands of CLAYMAN and CRANE. She just sat there whilst CLAYMAN demanded that she be removed, and she was even willing to sit and say nothing when PLAINTIFF was being threatened with arrest.

100)    PLAINTIFF was threatened with arrest without probable cause for merely standing up for her constitutional rights and her rights under the TOWN Charter. PLAINTIFF will no longer attend TOWN Council Meetings because of a devastating fear of being arrested if she dares to speak of her concerns with regards to the problems she sees within the TOWN. Those fears are not speculative, but are well-founded both in the

long history of disputes between these parties and by the fact that the TOWN and its officials have actively conspired to violate PLAINTIFFS constitutional right's through a campaign of harassment, threat of arrest, malicious prosecution, denial of her rights under Florida Statute 119 and years of public condemnation of PLAINTIFFS character.

101)    PLAINTIFF maintains that her being threatened with arrest on **OCTOBER 25, 2011** was unlawful and was undertaken without probable cause or reasonable belief that she had committed any crime or was about to commit a crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate her and to deny her the ability to speak freely.

102)    The facts will demonstrate that CRANE deliberately abused his power by threatening PLAINTIFF with arrest thus elevating his conduct to the arbitrary and conscience shocking behavior prohibited by substantive due process. CRANES actions were intended to inflict harm to PLAINTIFF.

103)    The disparate treatment of the PLAINTIFF was motivated by an invidious purpose; to-wit: to deprive Plaintiff of her constitutional rights and liberties and State law freedoms through repeated harassment and public ridicule, from seeking political reforms, from engaging in core political activities and as punishment for having exercised those fundamental constitutional rights and dared to question them on what she thought were actions that did serious damage to the residents of the TOWN of South Palm Beach. BIGGS and WHITE appear to be motivated NOT to choose to make the TOWN run according to the laws of the land and the TOWN Charter but have instead, developed a stand to go out of their way to justify Council's and employees lack of transparency and

they also ignored the heavy handed and obnoxious treatment of the PLAINITFF by

CLAYMAN and CRANE.

104)     PLAINTIFF claims that all the steps taken against her were done with malice

and believes that Public servants who knowingly violate the public's right to know

should be personally accountable.

105)     PLAINIFF spoke out on a matter of public concern and therefore engaged in

protected speech and the defendants' retaliation was significant, malicious and done with

evil intent. At no time in these many years of abuse against the PLAINTIFF did the

TOWN take any steps to correct these unconstitutional actions against PLAINTIFF.

**TOWN HALL MEETING OCTOBER 26, 2010:** CLAYMAN States This Town is

prepared; the Chief is on top of things when it comes to Hurricanes.

106)     Linda Decaro declares: "I have a couple of questions. Mr. CLAYMAN you just

mentioned that the Chief was on top of things. If he were so on top of things why weren't

our Officers not certified in CPR, they are our first response. After I mentioned it a

couple of meeting's ago he did then goes and sends them to be certified or should I say

recertified.

107)     No comments from anybody and no threats of arrest. DECARO speaks directly at

CLAYMAN no interruptions from BIGGS and no threat of arrest by CRANE

108)     **One month later at the NOVEMBER 23, 2010 Meeting** PLAINTIFF: Isabella:

May I request I am not interrupted I would like to ask Town Manager some questions.

109)     **Attorney BIGGS**: You cannot speak directly to an employee.

110)     PLAINTIFF: There is lack of communication between the Town Clerk and Town

Manager- BIGGS: Interrupts Plaintiff again.

111)    DEFENDANTS has no problem allowing DECARO to address DEFENDANTS

by name, but when it comes to PLAINTIFFS very serious and legitimate questions she is

treated by BIGGS in his usual arrogant, condescending and ongoing incompetent manner.

112)    PLAINTIFF claims that all the steps taken against her were done with malice

and believes that Public servants who knowingly violate the public's right to know

should be personally accountable.

113)    PLAINIFF spoke out on a matter of public concern and therefore engaged in

protected speech and the defendants' retaliation was significant, malicious and done with

evil intent. At no time in these many years of abuse against the PLAINTIFF did the

TOWN take any steps to correct these unconstitutional actions against PLAINTIFF.

Because of the treatment by the DEFENDANTS PLAINIFF has suffered extreme

emotional problems. Their treatment her depression and social isolation has reached a

point that she no longer lives a normal life.

114)    Below are a <u>few</u> examples of abusive things that other residents are allowed to

say. They were allowed to speak directly to Council Members, employees and attorneys.

Incidents of name calling, insults to the Mayor and general mob like behavior by the

audience and all without interruptions and certainly no threats of arrest.

115)    <u>Town Council Meeting June 22, 2009</u>

Stella JORDAN further said that she was disappointed that Mayor Millar discussed

something so strongly for something that was not presented fully to the public.

Murray Fox said that the Planning Board came from a place of self-interests.

116)    <u>Town Council Meeting August 25, 2009</u>

Joseph Kolbowski stated that Mayor Millar owed an explanation to the residents of the

Town of South Palm Beach regarding the recent newspaper articles. He also said that

Mayor Millar should step down as this was not the first time this type of thing happened.

Bud Krasnow, said that he could not believe what he was hearing this evening. He

condemned Mayor Millar and questioned the Mayor's pride.

117)    First Budget Public Hearing September 15, 2009

Linda Decaro, inquired regarding short sales and foreclosures. She also "attacked"

Councilor Flagello for the short sale of his condominium without paying his taxes.

118)    Nancy McCrosson, inquired whether Citizen Millar, by handing his gavel over to Vice

Mayor McCrosson for the remainder of the Budget Meeting, was still Mayor of the Town

of South Palm Beach or not, and was he resigning. She said it seemed like Mayor Millar

could not handle the situation this evening.

119)    Town Council Meeting September 22, 2009

Bud Krasnow, discussed how Mayor Millar spoke to his condominium during his

campaign and the promises he made. He further said that Mayor Millar lied and "has no

shame Mr. Krasnow said he wished there was a vote, at this time, to remove Mayor

Millar.

120)    Stella JORDAN, directed her comments to Mayor Millar. She said that his leadership

was causing irreparable harm. Ms. Jordan further said that his actions are embarrassing, creating

dissention and angst within the Town. She called for Mayor Millar's resignation, as he

was guilty of recall proceedings.

121)    Special Town Council Meeting October 20, 2009.

Valerie Flynn, Horizons East (3580) read a letter which stated she was angry at herself for being

taken in by such deceit by Mayor Millar's change of heart in regard to his vote.

122)    Stella JORDAN directed her comments to Mayor Millar. She said that his leadership

was causing irreparable harm. Ms. Jordan further said that his actions are embarrassing, creating

dissention and angst within the Town. She called for Mayor Millar's resignation, as he was guilty of recall proceedings.

123)    Regular Town Council Meeting  October 27, 2009

David Shapiro, said that he blamed the Planning Board, e.g., Michael Nevard, Deborah (Dee)

Robinson and Patricia Festino, who have a personal agenda, which eventually led to their rejection of the.

Town Council Meeting -July 27, 2010 Linda DeCaro verbally attacked Council Member Jordan's misuse of a boom box on her balcony.

Michelle Paloka, 3550 (Palm Beach Oceanfront Inn) directed her comments to specific Council Members. Town Attorney Biggs corrected Ms. Paloka stating that all comments should be directed to the Council, as a whole.

**124)**    Linda DeCaro, inquired regarding certification of Town of South Palm Beach Police Officers,inregard to the drowning of the two (2) visitors to this area.

## MALICIOUS PROSECUTION

## EXHIBIT: FIVE – COPY OF PROBABLE CAUSE AFFIDAVIT.WHEN
## PLAINTIFF RECEIVED IT FROM CRANE IT WAS INCOMPLETE

125)     At a TOWN Hall Budget Meeting held on September 9, 2009 PLAINTIFF asked

why our TOWN that is only ⅝ of a mile long and which is virtually crime free except for

traffic violations was paying an Investigator in the Police Department over $75,000 per

year. At the time MCKIRHCHY was that Investigator.

126)     PLAINTIFF also had discovered that our Police Lieutenant and been given a

$28,000 dollar raise in one year. Later TAYLOR admitted that an error had been made.

127)     MILLAR praised MCKIRCHY

128)     CRANE discussed PLAINTIFFS comments with her that evening and made it

very clear to her that he was not happy with what she had said and that she should have

gone personally to TAYLOR and discussed the matter.

129)     Captain WEBBS Job description states that he is responsible to investigate all

criminal cases in the TOWN but he only checked the paperwork from MCKIRCHY on

PLAINTIFFS case and allowed it to go forward.

130)     Soon after on October 30, 2009 a South Palm Beach resident named Linda

DECARO went to the South Palm Beach Police Department and accused PLAINTIFF of

battery Incident Report #1- Case 09-10-1008. EXHIBIT: SIX

131)    PLAINTIFF claimed from the beginning that in fact it was DECARO who had attacked her and that she was forced to defend herself against a clearly drunk, foulmouthed violent out of control DECARO.

132)    DECARO was responsible for maliciously initiating untrue charges of battery against PLAINTIFF.

133)    PLAINTIFF claims that Officer **Larry Buffolino, who took the complaint,** was clear on the fact that DECARO'S complaint was accusing both PLAINTIFF and Mayor MILLAR of criminal behavior. Officer Buffolino confirmed this on EXHIBIT: SIX

134)    PLAINTIFF claims that only 1/3rd of DECARO'S complaint dated October 30, 2009 (one week after the alleged battery) contained accusations against PLAINTIFF and the other 2/3rds contained accusations of what could be serious criminal behavior by Mayor MILLAR.

135)    MCKIRCHY, CRANE and WEBB chose to completely ignore all criminal accusations made by DECARO against MILLAR regarding: a) a threat on PLAINTIFF'S life by Mayor MILLAR: b) attempted bribery of DECARO by Mayor MILLAR, c) interfering with witness DECARO by Mayor MILLAR d) stalking of DECARO by Mayor MILLAR.

136)    On November 5, 2009 DECARO put in a second complaint against Mayor MILLAR again accusing him of stalking her. MCKIRCHY, CRANE and WEBB again never questioned Mayor MILLAR regarding this second accusation of stalking against

him by DECARO. MCHIRCHY, CRANE and WEBB once again chose to ignore these very serious accusations against the TOWNS Mayor.

137)      The Officer DECARO complained too with regards to her second complaint of MILLAR stalking her never even put in the effort to write up an Incident Report. This was confirmed by CRANE in an e-mail dated July 6, 2011.

138)      PLAINTIFF claims that the prosecution failed and that the underlying case was terminated in her favor on February 9, 2011. EXHIBIT: SEVEN

139)      PLAINTIFF claims that in most cases the accused will be interviewed after the complainant has already been questioned. Usually after meeting with the complainant and the subject, the investigator is usually faced with a "he said/she said" and other witnesses are integral sources of information to balance the facts and interviewers will also want to limit the information revealed about the situation to the greatest extent possible. When questioning MILLAR, MCKIRCHY force fed DECAROS statements to him.

140)      In PLAINTIFFS case DECARO was never interviewed or asked one documented question regarding the Complaint she put in against PLAINTIFF on October 30, 2009.

141)      In PLAINTIFFS case MILLAR was never interviewed or asked one documented question regarding the Complaint DECARO put in against him on October 30, 2009.

142)      MCKIRCHY states on Supplemental Report #1 November 3, 2009 "Miss. DECARO also gave a summary of her recent encounters with Miss Charnley. There is no written or taped information on this.

143)      MILLAR statement on November 6, 2009 five days before PLAINTIFF; this statement was taped.

144)     PLAINTIFF was questioned and taped on November 11, 2009 five days after MILLAR.

145)     Peter Palooka's sworn Affidavit EXHIBIT: EIGHT was received at the South Palm Beach Police Department on November 18, 2009 twelve days after MILLAR interview.

146)     MCKIRCHY, CRANE and WEBB never took into account the vastly different version that MILLAR gave Paloka minutes after the altercation. Mr. Paloka was never contacted or interviewed.

147)     Neither DECARO nor MILLAR have been questioned on the differing version of that evening.

148)     PLAINTIFF claims that MCKIRHCY had identified himself as Investigator on Police Incident Reports since as early as 2002 but when she e-mailed CRANE with regards to any training MCKIRCHY had had to be the TOWNS investigator he replied "none"

149)     PLAINTIFF claims that MCKIRCHY, CRANE and WEBB were able to affect the prosecution of the PLAINTIFF on the charge of battery by misrepresenting facts to the judge.

150)     MCKIRCHY lies on probable cause affidavit in an effort to deceive the Judge: He writes: "Mr. MILLAR stated DECARO and Isabella Charnley were involved in a verbal dispute over an invitation to an upcoming event which he had invited Linda to attend. Linda declined the invitation and Isabella stated she would go reference to an invitation". MILLAR never said such a thing.

151)     MCKIRCHY writes "Mr. MILLAR stated Isabella, in a highly agitated state, grabbed Linda's Left arm and forced it back causing Linda to scream out in pain". Mayor MILLAR did not say that.

152)     MCKIRCHY writes: "Desmond assisted in keeping both subjects apart". Neither MILLAR, DECARO nor PLAINTIFF made any statement that "Desmond" helped to keep them apart" Desmond was not even there at the time of the altercation. MILLAR states "he came and helped her to her car"

153)     He writes without a sworn affidavit that Desmond stated "he also heard Isabella on the following Tuesday night October 27, 2009 say "I should have ripped your arm off" to Ms. Decaro on reference to the battery incident".

154)     MCKIRCHY writes: "Mr. MILLARS statement corroborated the sworn statement given by Linda DECARO"

155)     PLAINTIFF will argue that Mayor MILLARS statement does not corroborate DECARO'S statement in many instances.

156)     MCKIRCHY writes "During my interview with Miss Charnley she stated two individuals Peter Paloka and LaMelas, heard a conversation with her and Millar". PLAINTIFF claims that this is not true, nowhere either written or taped does she make such a statement.

157)     Nowhere on the front page of his Affidavit does MCKIRCHY state the PLAINTIFF had claimed self-defense.

158)     PLAINTIFF claims that the forwarding a Probable Cause Affidavit against her to the State Attorney was taken with malicious intent by MCKIRCHY, CRANE and WEBB.

159)    PLAINTIFF claims that her prosecution is an abuse of the legal process because it

is the initiation of legal action without probable cause and with an ulterior or improper

motive and that she was denied due process.

160)    PLAINTIFF claims that malice and ill will was expressed or it may be implied

from the lack of probable cause to commence the action.

161)    PLAINTIFF claims that DECARO was well known by MCKIRCHY, CRANE

and WEBB which is shown by multiple South Palm Beach Police Incidents Reports

including two domestic violence incidents and they all describe DECARO as an uncouth

foulmouthed drunkard who was an aggressive and violent out of control woman such as

she was that night the incident on October 25, 2009.

162)    PLAINTIFF believes that at no time was DECARO ever charged with any

criminal offense by the South Palm Beach Police Department.

163)    Although MCKIRCHY, CRANE AND WEBB were well aware of the

troublesome and violent DECARO, they chose for a decade to overlook the many

documented, very troubling incidents which included violence towards others and take no

actions against her, but after DECARO falsely accuses PLAINTIFF of battery

MCKIRCHY immediately starts a criminal investigation against her which ends with a

Probable Cause Affidavit against PLAINTIFF   being sent to the State Attorney's Office.

164)    PLAINTIFF has more violent incidents that happened at the Tides Bar in South

Palm Beach, which had witness statement's attached that pointed out who was the

perpetrator; nobody was charged with any criminal act.

165)    Defendants MCKIRCHY, CRANE OR WEBB maliciously filed and pursued

criminal charges against PLAINTIFF on actions she did not commit, without probable

cause and for the improper purpose of interfering with the Fourth and Fourteenth Amendments of the United States Constitution.

166) MCKIRCHY, CRANE and WEBB did not have probable cause to forward it to State Attorney's Office because none of them investigated or even considered facts that they arguably should have discovered.

**167)** PLAINTIFF claims that apparently in October 2009, she a 66 year old woman who had never been in trouble with the law in her whole life and certainly has no history of violence became an accused, criminal batterer, that needed to be taken off of the streets of South Palm Beach so the citizens could breathe easy and sleep well at night.

168) MCKIRCHY, CRANE and WEBB refused to investigate the criminal accusations that DECARO made against Mayor MILLAR, but followed through with the vindictive untrue claims by DECARO against PLAINTIFF.

**169)** PLAINTIFF after having studied the evidence against her in this case is appalled that **Mayor MILLAR was then used as the only witness against her.**

170) As per DECAROS statement she claims that she and MILLAR had met and spoken numerous times since the alleged battery, she even states that they had lunch together which would have given them plenty of opportunity to discuss their evidence; MILLAR swears on the tape he never spoke or met with DECARO. At no time did MCKIRCHY ask MILLAR about this major discrepancy in their stories; PLAINTIFF claims that MCKIRCHY coerces with suggestive questions for MILLAR to give false testimony against her and CRANE and WEBB condoned and approved his actions.

171)      PLAINTIFF claims that MILLAR gave two different stories within five minutes of his statement the last one confirming exactly what PLAINTIFF had said in her written and taped statements.

172)      PLAINTIFF claims that MILLAR lied in his recorded statement against her, and claims MCKIRCHY, CRANE and WEBB still brought charges against her.

173)      PLAINTIFF claims that DECARO states MILLAR tried to bribe her.

174)      PLAINTIFF believes that the mere tender of a bribe or the expression of ability and a desire to pay a bribe may be sufficient to constitute the offense; MCKIRCHY never asks MILLAR about that statement.

175)      PLAINTIFF claims that DECARO in her complaint states MILLAR told her he would make PLAINTIFF disappear; MCKIRCHY never asks MILLAR about that statement.

176)      PLAINTIFF believes that this was a credible threat because Mayor MILLAR was known to always carry a gun and who on many occasions became violent and out of control after consuming alcohol.

177)      PLAINTIFF claims that MCKIRCHY notes on the Probable Cause Affidavit document that within an affidavit sworn by Peter Paloka it states "MILLAR indicated nobody was hit, but there was a physical altercation, where Mr. MILLAR intervened and got between both parties"

178)      PLAINTIFF what was actually stated by Peter Paloka on his affidavit was "she stated that she did not start the argument and that she did not hit Ms. DECARO. She asked Mr. MILLAR to confirm that and he did". EXHIBIT: EIGHT

179)      PLAINTIFF is appalled by the omission of the total facts in this affidavit.

180)    PLAINTIFF claims that Peter Paloka had no reason to lie against MILLAR, and

that in fact MILLAR was the TOWN Mayor at the time and voted yes on the

redevelopment of the Paloka's family's Palm Beach Oceanfront Inn.

181)    PLAINTIFF claims that MCKIRCHY, CRANE nor WEBB ever question

MILLAR or DECARO with regards to the discrepancies between their story and that of

Peter Paloka's sworn affidavit.

182)    PLAINTIFF claims that MCKIRCHY, CRANE and WEBB included in the

Probable Cause Affidavit another Incident Report # 09-10-1004 October 29, 2009,

wherein DECARO accused her of threatening to kill her and which had absolutely

nothing to do with the incident that she was charged with, but MCKIRCHY omits a

witness statement that claimed DECARO had to be dragged away from her. EXHIBIT:

NINE.

183)    On March 17, 2014 PLAINITFF went to the TOWN Hall inspected the probable

cause documents and all reference to Incident Report # 09-10-1004 October 29, 2009 had

been removed.

184)    Neither did MCKIRCHY include PLAINTIFFS complaint to CRANE regarding

the Incident Report # 09-10-1004 for not including the facts that Robert LeMelas and

Desmond Lenny had confirmed to the Police Officers on scene that PLAINTIFF had

NOT threatened to kill DECARO.

185)    MCKIRCHY informed PLAINTIFF that DECARO'S Medical Report showed

that she had beaten, stomped and kicked her.

186)     PLAINTIFF claims that in his statement Mayor MILLAR claims that "she was in a vice grip that even I could not pry off of her arm, that she twisted her arm up her back and stomped and kicked her".

187)     PLAINTIFF claims that nowhere in the Medical Report does DECARO suggest that she had any problem with her wrists or feet. The Medical Report does not document any redness bruising or any other type of mark on either DECARO'S wrists or feet. PLAINTIFF claims that the only documented visible physical mark on DECARO was a medium sized contusion on her left thigh.

188)     PLAINTIFF believes that other complaints and tenderness and pain as described by DECARO can be explained by her serious preexisting health problems or because DECARO faked her symptoms.

189)     DECARO is a serial PLAINTIFF in civil cases for money.

190)     DECARO who now lives full -time in New Jersey has already sued one person of battery against her and another 65 year old woman for stalking her.

191)     MCKIRCHY forwarded the Probable Cause Affidavit to the State Attorney's Office on December 14, 2009 PLAINTIFF was not charged until October 8, 2010.

192)     PLAINTIFF suffered for 10 months and had to live with the threat of arrest hanging over her head, which invaded her everyday life with increased her anxiety, depression and social isolation.

193)     PLAINTIFF attempted to try to get back into the work force but because of the stress that she had been put under it was not possible and she had to stop.

194)     PLAINTIFF after receiving the Probable Cause Affidavit documents that were presented against her sent an e-mail dated November 27, 2010 to CRANE wherein she

asked "If you were to get evidence that a witness had tried to bribe another witness and the same person said he would have someone killed would you start an investigation?

195)     On November 27, 2010 CRANES answered PLAINTIFF regarding her hypothetical question he wrote: "We would start the investigation and get assistance from the Sheriff's office from one of their detectives that are in this type of unit"

196)     PLAINTIFF wants to note that MCKIRCHY, CRANE and WEBB never even informed her of DECARO'S accusation that Mayor MILLAR had told her "I will make her disappear" and certainly did not call in the Sherriff or anyone else for that matter.

197)     On December 1, 2010 a few days after receiving the Probable Cause Packet from the State Attorney PLAINTIFF again e-mailed CRANE with her concerns:

198)     Chief,  Are you aware that in her statement Linda DECARO said the Mayor MILLAR was going to hire someone to "make me disappear" are you aware that the says MILLAR was trying to bribe her not to go forward with the case and that he was stalking her?

199)     In fact have you or anybody in SPBPD read her statement - and did anybody bother to check it out against his statement?

200)     How could you and the department have left me out there with this threat on my life without telling me - he lives in my building and has a gun - and is certainly off kilter!

201)     CRANE did nothing more than send PLAINTIFF a telephone number to get a restraining order against MILLAR. It was a year late.

202)     PLAINTIFF claims that she contacted CRANE twice about her concerns with the investigation of DECARO'S complaint against her before the actual court case started and he made no move to help her.

203)    PLAINTIFF truly believed at that time CRANE would start a review to the case against her; CRANE did nothing.

204)    PLAINIFF claims that by the time she had to stand up in court she had presented at least some evidence that should have been investigated which would have proved that there were serious reasons to doubt DECARO and MILLARS truthfulness.

205)    CRANE allowed PLAINTIFF to be charged and prosecuted without ever investigating the problems that she had pointed out to him in her e-mails.

206)    PLAINTIFF claims that DECARO and MILLARS statements were unreliable and were not legally sufficient to create probable cause for prosecution. Indeed, under the circumstances, DECARO and MILLARS statements were so tainted and unreliable that they were of no real probative value.

207)    PLAINTIFF claims a complete disregard of her constitutional rights by MCKIRCHY, CRANE and WEBB which was done with malice and evil intent.

**208)**    PLAINTIFF claims CRANE and WEBB were fully aware of all of the above but still allowed her to be prosecuted for a crime that could have had a chance of up to a one year jail sentence against her and did nothing; **_instead they allowed Mayor MILLAR to be used as the only witness against her_**

209)    PLAINTIFF claims that MCKIRCHY, CRANE and WEBB willfully and maliciously chose to ignore all of DECARO'S accusations against Mayor MILLAR and only concentrated of the lies that DECARO stated against her.

210)    PLAINTIFF claims that because of non-action by the South Palm Beach Police Department that DECARO, a foul mouthed, abusive, violent drunkard, a toxic

pathological lying woman, was allowed to prowl the streets of TOWN of South Palm Beach for a decade allowing her to bring turmoil and hate into its citizens lives.

211) PLAINTIFF was caught in DECARO'S vortex of violence and was forced to defend herself against further physical abuse by DECARO.

212) PLAINTIFF had to stand up in court 3 times as a charged criminal. The charges were a direct result of MCKIRCHY, CRANE, WEBB'S and DECARO'S actions and because of their malicious actions she has suffered direct and immediate violations of her constitutional rights. MCKIRCHY'S, CRANE'S, WEBB'S and DECARO'S conduct is motivated by an evil motive or intent, and involves reckless or callous indifference to her federally protected rights.

213) PLAINTIFF understands that the prosecutor is the one, who actually charged her, but without the false accusations by DECARO, MCKIRCHY'S lies on the Probable Cause Affidavit which although it was written by MCKIRCHY it was backed up by the approval of CRANE and WEBB, the lack of any true investigation she would never have been put through the nightmare that she went through and is still going through today.

214) PLAINTIFF claims that the actions of MCKIRCHY, CRANE and WEBB against her were an abuse of public trust and lacked any type of professionalism and personal integrity.

215) MCKIRCHY, CRANE, WEBB and DECARO acted intentionally and maliciously with the express intention of depriving PLAINTIFF of her freedom and of her civil liberties.

216)     PLAINTIFF maintains that MCKIRCHY, CRANE and WEBB acted in concert and conspiracy with one another to achieve the common purpose of depriving her of her constitutional and civil rights.

217)     PLAINTIFF claims that the actions of CRANE and WEBB was intentional misconduct and that they had actual knowledge of the wrongfulness of the conduct by MCKIRCHY, but despite that knowledge, intentionally allowed the wrongfulness continue.

218)     PLAINTIFF claims gross negligence by MCKIRCHY, CRANE and WEBB because their conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of the PLAINTIFF who was exposed to such conduct.

219)     PLAINTIFF understands that the Courts have recognized that a single credible victim or eye witness can provide the basis for probable cause. By his own admission MCKIRCHY states there were no other witnesses to the incident other than Mayor MILLAR.

220)     PLAINTIFF claims there is nothing credible about DECAROS Complaint against her and nothing credible about Mayor MILLAR'S statements and claims against her.

221)     PLAINTIFF claims that the Probable Cause was based on suspect or dubious evidence.

222)     CRANE and WEBB could have confirmed whether or not MCKIRCHY'S investigation for probable cause against PLAINTIFF was sufficient to forward the charges of battery to the State Attorney by simply reading DECAROS complaint and comparing it to MILLAR'S 15 minute recorded statement.

41

223)     PLAINTIFF claims that it was incumbent upon the MCKIRCHY, CRANE and

WEBB to have further investigated the criminal claims that DECARO made against

Mayor MILLAR.

224)     PLAINTIFF claims that MCKIRCHY, CRANE and WEBB did nothing, and were

protecting the MAYOR OF THE TOWN.

225)     PLAINTIFF claims that the lack of effective investigation and lack of supervision

by CRANE and WEBB before sending the Probable Cause Affidavit to the State

Attorney led to her being prosecuted for battery.

226)     PLAINTIFF claims that CRANE and WEBB condoned the actions of their

subordinate MCHIRCHY without a reasonable investigation or supervision.

227)     PLAINTIFF claims circumstances known to MCKIRCHY, CRANE and WEBB

were insufficient to give rise to probable cause.

228)     PLAINTIFF claims that the actions of MCKIRCHY, CRANE and WEBB were

malicious and carried out with complete disregard for PLAINTIFF'S constitutional

rights.

229)     The actions of MCKIRCHY, CRANE and WEBB, as described herein, were

taken under color of law in direct violation of PLAINTIFFS constitutional rights and are

therefore actionable under 42 U.S.C. § 1983.

230)     PLAINTIFF claims there was a conspiracy by MCKIRCHY, CRANE and WEBB

to deny her civil rights.

231)     PLAINTIFF sues the TOWN, CRANE and WEBB for failure to supervise,

discipline, and correct unconstitutional practices and as a result of their concerted and

unlawful malicious acts, done wrongful and done intentionally, without just cause or

42

excuse she has suffered excruciating pain and suffering, loss of her normal daily life

activities, embarrassment, and ridicule within the TOWN.

232)      PLAINTIFF claims the acts were malicious and by these acts by MCKIRCHY,

CRANE and WEBB she was denied her right to equal protection of the laws and a

violation of the Fourth and Fourteenth Amendments of the United States Constitution

which is a part of the Bill of Rights which guards against unreasonable searches and

seizures, along with requiring any warrant to be judicially sanctioned and supported by

probable cause.

## DENIAL OF PLAINITIFF DUE PROCESS AND RIGHTS UNDER PUBLIC RECORDS –STATUTE 119.

233)      Because of the voluminous nature of the evidence that PLAINTIFF has, she has

only attached Florida Statute 119. EXHIBIT NINE. Below are a few examples of the

egregious actions against her by WHIPPLE and they were carried out with the full

knowledge of TAYLOR and BIGGS. PLAINTIFF cannot get any information, or Public

Documents with regards to the problems she thought were happening within her TOWN

other than requesting it from WHIPPLE or TAYLOR.

234)      On February 7, 2011 WHIPPLE produced and sent a Response Statement to

JACOBSON, MILLAR, TAYLOR, FLAGELLO, JORDAN and GOTTLIEB. This

document claimed that the attached transcripts of resident's remarks at a Planning Board

Meeting, held on December 9, 2010 were verbatim. PLAINTIFF'S transcript was far

from verbatim. The transcript was missing serious statements against one of the Planning

Board Members with regards to ex-parte e-mails and meetings with resident that she was

having but not disclosing to the other residents of the TOWN. The Planning Board

members' actions were in violation of Statute 286.0115 and also in violation of TOWN Resolution 233.

235)     On February 15, 2011 WHIPPLE sent an e-mail to PLAINTIFF and TAYLOR telling her that the cost of looking at TAYLORS personnel file would be $165.54. WHIPPLE claimed that it would take her 5-6-hours to pull, copy (which I had not asked her to do) and redact the file and apparently TAYLOR had no problem with the estimated cost to be charged to PLAINTIFF; she was unable to afford the exorbitant cost and was unable to view TAYLORS file.

236)     PLAINTIFF'S life became a nightmare when getting access to the Official Tape Recordings of the Town Hall Meetings that are her right under the law to hear.

237)     A serious problem started from PLAINTIFFS first e-mail to WHIPPLE sometime in August 8, 2011 requesting to listen to Tapes of the TOWN Hall Meetings, and continued until November 15, 2011 when she stopped requesting to hear the tapes that she needed because she became petrified that she would be arrested after WHIPPLE called the Police on her twice for simply asking her questions that it is her duty to answer. WHIPPLE never gave a warning to PLAINITFF that she was calling the Police on her they just appeared behind her. PLAINTIFF was very intimidated.

238)     When PLAINITFF requested to listen to TOWN Hall Meeting Recordings WHIPPLE limited her to 4 hours Monday, Wednesday and Thursday. At one point PLAINTIFF was denied access to the tapes for 9 out of 10 working days and on another occasion WHILLPE barred her from hearing the tapes because she was having the day off. PLAINTIFF complained to WHIPPLE about these restrictions, but to no avail.

<u>Arbitrary times for inspection are in violation of Statute 119. TAYLOR was made by e-mails of these restrictions were being put on her.</u>

239)     When PLAINITIFF requested that the recordings be transferred to disc WHIPPLE lied to her by saying that some of the meetings could only be put on tapes.

240)     On November 26, 2013, after WHIPPLE had retired PLAINTIFF received an e-mail from Yudy Alvaraz the new TOWN Clerk, this e-mail was also sent to TAYLOR and BIGGS, in this e-mail she states: "Yes, you can get all recordings on a disc, is just a conversion process and its time consuming"; PLAINTIFF paid $229 for this information.

241)     It had taken WHIPPLE and the TOWN approximately 34 days to produce the requested info which had actually had only taken five and a half hours for and an employee to produce. This was approximately 34 days that PLAINTIFF was robbed of her right to get his information and to be able to use it in Causes of Action in this Complaint.

242)     By e-mail, on September 13, 2013 PLAINTIFF requested from WHIPPLE: "I would like to request under the Public Records Act, Chapter 119 of the Florida Statutes all documents produced by the Towns Citizens Advisory Council which was seated on January 25, 2011. I would like everything produced up until today". On November 10, 2013, the day that WHIPPLE retired, she received notice that her requested documents were ready. It had taken WHIPPLE and the TOWN approximately 41 days to produce these documents, which by their own words only took two and a half hours to produce by an employee of the TOWN. This was 41 days that PLAINTIFF was robbed of her right to get her information and to be able to use it in Causes of Action in this Complaint.

243)     These actions and behavior is not a mere violation of Statute 119, this behavior

towards PLAINTIFF is a long established "practice and policy" that goes back for years

by WHIPPLE, TAYLOR, BIGGS and the TOWN. There are too many instances to

present within this claim. WHIPPLE and the TOWN engaged in a "pattern of delays" by

taking months to fully comply with PLAINTIFFS Public Records requests. This "practice

and policy" by WHIPPLE and the TOWN is done in a malicious manner and with evil

intent. This "practice and policy" by WHIPPLE, TAYLOR, BIGGS and the TOWN is

done with the sole purpose of denying PLAINTIFF of information that she needed.

244)     At no time did WHIPPLE, TAYLOR or BIGGS offer to PLAINTIF any

explanation for the delays, and they failed to cite any reason which would allow any such

records to be exempt under Florida's strict policies and guidelines in the Sunshine-in-the-

Government Law.

245)     TAYLOR and BIGGS and WHIPPLE conspired to deny PLAINTIFF her rights

given to her under Florida Constitution Article I, Section 24, Access to public records and

Meetings. TAYLOR and BIGGs were well aware of what was happening to PLAINTIFF

because of the malicious, devious and illegal actions taken by WHIPPLE against the

PLAINTIFF.TAYLOR was the TOWN Manager whose duty it was to control

WHIPPLE'S malicious actions towards PLAINTFF. BIGGS was the TOWN Attorney

who was responsible for making sure that the TOWN was run legally but they took no

actions to right the wrongs that were perpetrated on the PLAINTIFF.

246)     The reason for the delay in PLAINTIFF filing this complaint is because of the

unbelievable and unconstitutional delays and denials of her requests for Public

Documents which would provide documented evidence against the TOWN and all

46

DEFENDANTS. PLAINTIFF was targeted and conspired against for that purpose. PLAINTIFF was treated with malice and ill will by WHIPPLE, TAYLOR and BIGGS. PLAINTIFFS' life was made more and more stressful when she had to continually request and fight for the same documents over and over again.

247)     PLAINTIFF will provide voluminous evidence that WHIPPLE acted with malice and ill intent towards her for years and conspired with TAYLOR to make sure that she never received documents and if she did eventually receive them that it was not done without having ongoing fights to get them.

248)     For years PLAINTIFF was NEVER treated with good faith, in fact they continually robbed her of rights under the Florida Constitution. PLAINTIFF refuses to believe that this is simple incompetence. She believes that WHIPPLE and TAYLOR conspired for years to make sure that she did not get the documents which she is entitled to under the Florida Constitution. These actions by WHIPPLE and TAYLOR were done with the sole intent to deny and delay PLAINTIFF from getting evidence of nefarious acts done within the TOWN.

249)     It is the DUTY of WHIPPLE and TAYLOR to produce those documents and PLAINTIFF should not have to beg and fight over and over again to get what are due to her under the law.

250)     PLAINTIFF will also produce recordings that show she also complained at TOWN Hall Meetings in front of the TOWN Council Members and TAYLOR, WHIPPLE and BIGGS.

251)     PLAINTIFF claims multiple violations of section 119.07, Florida Statutes (2006),

and Article I, section 24(a) of the Florida Constitution that continued over many years

was based on WHIPPLE, TAYLOR and BIGGS ongoing malice and bias towards her.

252)     PLAINTIFF claims that every record she ever requested is a "public record" for

purposes of Statute 119.

253)     PLAINTIFF claims she is still waiting for records requested in January 2013

which she believed would help her in this complaint TOWN, WHIPPLE, TAYLOR and

BIGGS unlawful refusal to timely produce copies of the requested documents deny her

the primary usefulness of them.

254)     TOWN, WHIPPLE, TAYLOR and BIGGS engaged in a "pattern of delays" by

taking months to fully comply with the petitioner's public records requests.

255)     PLAINTIFF claims that instead of abiding by the Florida Statute 119 WHIPPLE,

TAYLOR and BIGGS chose to do exactly that which the legislature prohibits. The

TOWN is a political subdivision of the state created by the legislature and therefore must

yield to the policy established by the legislature.

256)     Production days or weeks later does not cure the error. The denial not only

breached the duty to provide such records at a reasonable time and under reasonable

conditions, but also contravened the purpose and mandate of Florida Statute 119. Also

producing the documents after the fact did nothing to mollify PLAINTIFFS' injury, the

deprivation of constitutional and statutory rights. WHIPPLE cannot claim lack of

knowledge of Florida Statute 119 as she has a Master in Municipal Clerk Certification.

257)     This Complaint is not a request to compel production

258)     The constant refusal of if denying her her rights made PLAINTIFF more

depressed, anxious and her social isolation became more and more debilitating.

## COUNT ONE

### (Right to Free Speech – Federal First Amendment)

259)     PLAINTIFF realleges the allegations set forth in paragraphs 60-124, and

incorporates those allegations in this Count by reference. This is an action for damages

against Defendants TOWN OF SOUTH PALM BEACH, JACOBSON, CLAYMAN,

JORDAN, FLAGELLO, GOTTLIEB, FISCHER,CRANE and BIGGS arising from their

repeated efforts to thwart her political activities in violation of PLAINTIFF's right of free

speech protected by the First Amendment.

260)     This Court is authorized to award PLAINTIFF damages for infringement of her

constitutional rights pursuant to 42 U.S.C. §1983.

261)     The First Amendment to the United States Constitution states that "Congress shall

make no law… abridging the freedom of speech…"

262)     A continuing controversy has arisen between the parties concerning

PLAINTIFF's rights to free speech on matters of public, political and individual concern.

263)     PLAINTIFF has been repeatedly denied by the DEFENDANTS when attempting

to review public records and when speaking before the TOWN OF SOUTH PALM

BEACH Council Members.

264)     PLAINTIFF maintains that her prosecution and her seizure by CRANE at a

TOWN Hall Meeting were and are unlawful and were undertaken without probable cause

or reasonable belief that she had committed any crime; all such charges being pretextual

and in furtherance of the Defendants' efforts to silence and intimidate the PLAINTIFF and to deny her the ability to speak freely.

265)     Likewise the repeated removal of the PLAINTIFF from City Commission meetings is unlawful and in furtherance of the Defendants' efforts to silence and intimidate the PLAINTIFF and to deny her the ability to speak freely.

266)     The , prosecution and seizure, and involuntary removals complained of herein are not isolated events, but were part of a larger campaign by which the TOWN and its officers, employees and agents harassed, intimidated all in an effort to disrupt her speech and political activities, to violate her constitutional rights and to cause her personal pain, suffering and damages.

267)     The violation of PLAINTIFF's First Amendment rights was intentional, malicious and carried out with complete disregard for the PLAINTIFF's constitutional rights. PLAINTIFF has suffered damages as a result of the violation of her constitutional rights.

268)     **WHEREFORE**, PLAINTIFF prays for the following relief:

269)     A. That this Court take jurisdiction over the parties and this cause;

270)     B. That this Court award PLAINTIFF compensatory damages against TOWN OF SOUTH PALM BEACH, JACOBSON, CLAYMAN, JORDAN, FLAGELLO, GOTTLIEB, FISCHER, CRANE and BIGGS for infringement of her constitutional rights pursuant to 42 U.S.C. §1983, and for injury to her person.

271)     C. That this Court award PLAINTIFF punitive damages against Defendants JACOBSON, CLAYMAN, JORDAN, FLAGELLO, GOTTLIEB, FISCHER.CRANE and BIGGS individually, to punish those individual Defendants for their unlawful actions

and to deter those individual Defendants and others from engaging in the same or similar

acts in the future.

272)    D. That this Court award PLAINTIFF her recoverable costs, including a

reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

273)    E. That this Court award PLAINTIFF all other relief in law and in equity to which

he may be entitled.

<b>COUNT TWO</b>

<b>Federal First, Fourth and Fourteenth Amendments)</b>

274)    PLAINTIFF realleges the allegations set forth in paragraphs 94 through 124, and

incorporates those allegations in this Count by reference.

275)    This is an action for damages against Defendant CRANE arising from the seizure

without probable cause of the PLAINTIFF at the TOWN Hall Meeting held on October

25, 2011and his  efforts to thwart her political activities in violation of PLAINTIFF's

right to petition government for the redress of grievances protected by the First and

Fourteenth Amendments.

276)    This Court is authorized to award PLAINTIFF damages for infringement of her

constitutional rights pursuant to 42 U.S.C. §1983.

277)    The First Amendment to the United States Constitution guarantees to the

PLAINTIFF the right "to petition the Government for a redress of grievances".

278)    A continuing controversy has arisen between the parties concerning

PLAINTIFF's rights to petition the government on matters of public, political and

individual concern.

279)     PLAINTIFF has been repeatedly intimidated and abused at TOWN Hall Meetings Defendants when attempting to speak before the TOWN OF SOUTH PALM BEACH Council Members.

280)     PLAINTIFF maintains that her seizure was unlawful and were undertaken without probable cause or reasonable belief to believe that she had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate the PLAINTIFF and to physically deny her the ability to petition the government for redress of her grievances.

281)     Likewise the repeated removal of the PLAINTIFF from TOWN Hall Meetings is unlawful and in furtherance of the Defendants' efforts to silence and intimidate the PLAINTIFF and to deny her the ability to petition the government for redress of her grievances.

282)     The seizure complained of herein is not isolated events, but were part of a larger campaign by which the TOWN and its officers, employees and agents harassed, intimidated PLAINTIFF, all in an effort to disrupt her speech and political activities, to violate hers constitutional rights and to cause her personal pain, suffering and damages.

283)     The violation of PLAINTIFF's First, Fourth and Fourteenth Amendment rights was intentional, malicious and carried out with complete disregard for the PLAINTIFF's constitutional rights.

284)     PLAINTIFF has suffered damages as a result of the violation of her constitutional rights.

285)     PLAINTIFF has a right to have this Court declare her rights under the First,

Fourth and Fourteenth Amendments as those rights are infringed upon by the Defendants'

actions, policies and procedures.

286)     **WHEREFORE**, PLAINTIFF prays for the following relief:

287)     A. That this Court take jurisdiction over the parties and this cause;

288)     B. That the Court award PLAINTIFF damages for the infringement of her First,

Fourth and Fourteenth Amendments right to petition the government for redress of

grievances, and for injuries to her person, arising from the malicious actions.

289)     C. That the Court award PLAINTIFF's damages for the infringement of her

First,Fourth and Fourteenth Amendment rights to petition the government for redress of

grievances, and for injuries to her person, arising from the false seizure arrest on October

25, 2011.

290)     D. That this Court award PLAINTIFF compensatory damages against TOWN OF

SOUTH and CRANE for infringement of her constitutional rights pursuant to 42 U.S.C.

§1983, and for injury to her person.

291)     E. That this Court award PLAINTIFF punitive damages against CRANE

individually, to punish him for his unlawful actions and to deter him and others from

engaging in the same or similar acts in the future.

292)     F. That this Court award PLAINTIFF her recoverable costs, including a

reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

293)     G. That this Court award PLAINTIFF all other relief in law and in equity to

which he may be entitled.

## COUNT THREE

### (Federal Equal Protection – Class of One

294)     PLAINTIFF realleges the allegations set forth in paragraphs 1 through 364 and

incorporates those allegations in this Count by reference.

295)     This is an action for damages against Defendants TOWN OF SOUTH PALM

BEACH, JACOBSON, CLAYMAN, JORDAN, FLAGELLO, GOTTLIEB,

FISCHER.CRANE and BIGGS arising from their selective enforcement of the laws

against PLAINTIFF in an effort to single out and punish her for the exercise of her

constitutional rights, all in violation of PLAINTIFF's right of Equal Protection

guaranteed by the Fourteenth Amendment.

296)     This Court is authorized to award PLAINTIFF damages for infringement of her

constitutional rights pursuant to 42 U.S.C. §1983.

297)     The Equal Protection Clause of the Fourteenth Amendment prohibits government

from discriminating against similarly situated individuals without a rational and neutral

basis for doing so.

298)     The Defendants' campaign of prosecution and seizure without probable cause and

harassment intentionally singled out PLAINTIFF for selective enforcement, inequitable

treatment and purposeful discrimination through the unequal, unjust and oppressive acts.

299)     Defendants have engaged in a course of conduct that treats PLAINTIFF

disparately from other similarly situated citizens.

300)     On information and belief, PLAINTIFF alleges that no other citizens have been

removed from a TOWN Hall Meeting in the manner in which PLAINTIFF was removed,

nor has any other citizen been seized without probable cause for demanding their rights under the First Amendment.

301)     PLAINTIFF no other citizens were threatened with arrest for trespassing even though they were similarly situated to the PLAINTIFF and their demands and behavior were indistinguishable from those of PLAINTIFF.

302)     PLAINTIFF was singled out for selective and unequal enforcement and suffered a unique disability imposed upon her and no other citizen of the TOWN.

303)     There exists no rational basis for treating PLAINTIFF in a disparate fashion as compared to every other citizen in the community.

304)     The disparate treatment of the PLAINTIFF was motivated by an invidious purpose; to-wit: to deprive PLAINTIFF of her constitutional rights and liberties and state law freedoms through repeated harassment and public ridicule, all in an effort to dissuade her from pursuing public records requests, from seeking political reforms, from engaging in political activities and as punishment for having exercised those fundamental constitutional rights.

305)     Defendants' basis for their actions was entirely pretextual. Defendants knew that there was no lawful basis for their actions and no probable cause to seize or prosecute PLAINTIFF for any of the actions complained of herein. The Defendants' actions were motivated entirely by intent to harass PLAINTIFF and deny her the equal protection of the laws.

306)     The Defendants' actions and policies, as applied to PLAINTIFF, violate the Equal Protection Clause of the Fourteenth Amendment.

307)     **WHEREFORE**, PLAINTIFF prays for the following relief:

308)     A. That this Court take jurisdiction over the parties and this cause;

309)     B. That this Court award PLAINTIFF compensatory damages against TOWN OF

SOUTH PALM BEACH, JACOBSON, CLAYMAN, JORDAN, FLAGELLO,

GOTTLIEB, FISCHER.CRANE,TAYLOR, WHIPPLE, MCHERCHY, CRANE, WEBB,

WHITE and BIGGS for infringement of her constitutional rights pursuant to 42 U.S.C.

§1983, and for injury to her person.

310)     C. That this Court award PLAINTIFF punitive damages against Defendants

JACOBSON, CLAYMAN, JORDAN, FLAGELLO, GOTTLIEB, FISCHER,

TAYLOR,WHIPPLE, MCHIRCHY, CRANE, WEBB, WHITE and BIGGS individually,

to punish those individual Defendants for their unlawful actions and to deter those

individual Defendants and others from engaging in the same or similar acts in the future.

311)     D. That this Court award PLAINTIFF her recoverable costs, including a

reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

312)     E. That this Court award PLAINTIFF all other relief in law and in equity to which

he may be entitled.

## COUNT FOUR

### Federal Fourth Amendment Violation

### Prosecution October 30, 2009 – Seizure October 25, 2011

313)     PLAINTIFF realleges the allegations set forth in paragraphs 60 through 124; 125

through 232 and incorporates those allegations in this Count by reference.

314)     This is an action for damages against Defendants TOWN OF SOUTH PALM

BEACH, MCKIRCHY, CRANE and WEBB arising from a prosecution of PLAINITFF

without Probable Cause on October 30, 2009 in violation of PLAINTIFF's rights under the Fourth Amendment to the United States Constitution.

315) This Court is authorized to award PLAINTIFF damages for infringement of her constitutional rights pursuant to 42 U.S.C. §1983.

316) The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause...".

317) No probable cause existed to prosecute PLAINTIFF and no reasonable official could have believed that PLAINTIFF had committed the crime of battery she had been accused of. The prosecution was objectively unreasonable and without foundation in the law.

318) Defendants TOWN OF SOUTH PALM BEACH, MCKIRCHY, CRANE and WEBB knew that there was no lawful basis to prosecute PLAINTIFF. Defendants intentionally violated PLAINTIFFS Fourth Amendment right to be free of unreasonable seizures by Prosecuting PLAINTIFF.

319) No reasonable police officer could have believed that probable cause to initiate a prosecution against her on the charge of battery.

320) PLAINTIFF's prosecution was malicious and part of a larger campaign to interfere with the exercise of hers constitutional rights, all in furtherance of the TOWNS policy to deprive PLAINTIFF of her constitutional rights and liberties and state law freedoms through repeated harassment and public ridicule.

321)     The individual Defendants TOWN OF SOUTH PALM BEACH, MCKIRCHY, CRANE and WEBB violated PLAINTIFF's Fourth Amendment rights as well as the clearly established law in this Circuit.

322)     PLAINTIFF suffered damages as a direct result of the unconstitutional prosecution by the Defendants, TOWN OF SOUTH PALM BEACH, MCKIRCHY, CRANE and WEBB.

323)     PLAINTIFF's damages consist of infringement upon her Fourth Amendment rights as well as emotional injuries, psychological harm, and humiliation.

324)     **WHEREFORE**, PLAINTIFF prays for the following relief:

325)     A. That this Court take jurisdiction over the parties and this cause;

326)     B. That this Court award PLAINTIFF compensatory damages against TOWN OF SOUTH PALM BEACH, MCKIRCHY, CRANE and WEBB for infringement of her constitutional rights pursuant to 42 U.S.C. §1983, and for injury to her person.

327)     C. That this Court award PLAINTIFF punitive damages against Defendants MCKIRCHY, CRANE and WEBB individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

328)     D. That this Court award PLAINTIFF her recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

329)     E. That this Court award PLAINTIFF all other relief in law and in equity to which he may be entitled.

**COUNT FIVE**

**State Law Malicious Prosecution – 2009 Prosecution)**

330)     PLAINTIFF realleges the allegations set forth in paragraphs 125 through 232

incorporates those allegations in this Count by reference.

331)     This Court has jurisdiction over this state law cause of action because

PLAINTIFF's other claims involve Federal Questions and this Court has supplemental

jurisdiction pursuant to 28 U.S.C. §1367.

332)     This is an action for damages against TOWN, MCKIRCHY, CRANE and WEBB

brought under the laws of the State of Florida and based on the malicious prosecution of

PLAINTIFF.

333)     This claim for malicious prosecution is filed within the applicable statute of

limitations. The right to maintain a suit for malicious prosecution arises upon termination

of the prosecution favorably to the PLAINTIFF. In this instance, the cause of action did

not arise until the charges were dismissed against PLAINTIFF on February 9, 2011 and

the four year statute of limitations does not run until February 9, 2015

334)     MCKIRCHY, CRANE and WEBB knew at the time they made the decision to

send a Probable Cause Affidavit against PLAINTIFF to the State Attorney that did not

have was no probable cause. A reasonable police officer in similar circumstances could

not have believed that PLAINTIFF committed a crime of battery against DECARO.

335)     Defendants MCKIRCHY, CRANE and WEBB filed criminal charges against

PLAINTIFF knowing at the time they did so that PLAINTIFF had not committed any

crime.

336)     Defendants MCKIRCHY, CRANE and WEBB maliciously filed and pursued

criminal charges against PLAINTIFF on charges she did not commit without probable

cause and for the improper purpose of interfering with her Fourth and Fourteenth
Amendments to the United States Constitution.

337)     Defendants acted intentionally and maliciously with the express intention of
depriving PLAINTIFF of her freedom and of her civil liberties.

338)     The prosecution terminated in PLAINTIFF's favor on February 9, 2011.

339)     PLAINTIFF was prosecuted against her will.

340)     PLAINTIFF has suffered damages as a direct and proximate result of the
malicious prosecution on false charges, depression, anxiety, extreme social isolation, pain
and suffering, humiliation and embarrassment and lost income.


## COUNT SIX

### (State Law Claim – Negligent Training / Supervision – 2009 Prosecution)

341)     PLAINTIFF realleges the allegations set forth in paragraphs 125 through 232 and
incorporates those allegations in this Count by reference.

342)     This Court has jurisdiction over this state law cause of action because
PLAINTIFF's other claims involve Federal Questions and this Court has supplemental
jurisdiction pursuant to 28 U.S.C. §1367.

343)     This is an action for damages against TOWN OF SOUTH PALM BEACH,
CRANE and WEBB brought under the laws of the State of Florida for negligence in the
training, supervision and instruction of its employee MCKIRCHY.

344)     At all times material hereto, TOWN was the employer of MCKIRCHY.

345)     MCKIRCHY, CRANE and WEBB filed charges against PLAINTIFF and actively
assisted in the prosecution of PLAINTIFF on these false charges.

346)     The TOWN knew or should have known that the charges against PLAINTIFF were baseless and brought in a bad faith attempt to deprive PLAINTIFF of her constitutional rights and liberties and state law freedoms through this prosecution.

347)     TOWN, CRANE and WEBB knew or should have known that its employee MCKIRCHY was engaged in the malicious prosecution of the PLAINTIFF in connection with the filing of a Probable Cause Affidavit on October 2009 for prosecution.

348)     TOWN , CRANE and WEBB knew or should have known that its employee MCKIRCHY had never received any training in investigating criminal cases.

349)     TOWN owed PLAINTIFF a duty of care to adequately train, instruct and supervise its police officers, including MCKIRCHY with respect to the Fourth and Fourteenth Amendments of the United States Constitution.

350)     TOWN breached its duty to PLAINTIFF by failing to adequately train, instruct and supervise its employees, including  MCKIRCHY. 259. Had MCKIRCHY been adequately trained, instructed and supervised, those officials would not have forwarded the Probable Cause Affidavit against the PLAINTIFF, would not have encouraged and assisted in the prosecution of PLAINTIFF for a non-existent crime.

351)     PLAINTIFF suffered damages as a direct and proximate result of TOWNS failure to exercise reasonable supervision of its employees, including MCKIRCHY.

**WHEREFORE**, PLAINTIFF prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award PLAINTIFF money damages against TOWN pursuant to §768.28, Fla.Stat. to compensate PLAINTIFF for the injuries TOWNS  negligence caused her to suffer.

## COUNT SEVEN

### Violations of 42 U.S.C.1985: Conspiracy To Violate Civil and Political Rights

352)      PLAINTIFF hereby incorporates, as is fully set forth herein, the allegations

contained in the preceding paragraphs of this complaint. 1 through 364

353)      In law, a civil conspiracy refers to collusion between two or more individuals or

entities that share a common plan to commit an illegal or wrongful act that leads to an

illegal or unjust end result.


354)      In this case PLAINTIFFS Amended Complaint states many times where the

unjust ends could not possibly have happened without a Civil Conspiracy, of all

DEFENDANTS.

355)      The elements of an action for civil conspiracy are the formation and operation of

the conspiracy and damage resulting to PLAINTIFF from an act or acts done in

furtherance of the common design. In such an action the major significance of the

conspiracy lies in the fact that it renders each participant in the wrongful act responsible

as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or

not he was a direct actor and regardless of the degree of his activity.

356)      By participation in a civil conspiracy, a coconspirator effectively adopts as his or

her own the torts of other coconspirators within the ambit of the conspiracy. In this way,

a coconspirator incurs tort liability co-equal with the immediate tortfeasors. Standing

alone, a conspiracy does no harm and engenders no tort liability. It must be activated by

the commission of an actual tort. "A civil conspiracy, however atrocious, does not per se

give rise to a cause of action unless a civil wrong has been committed resulting in

damage." A bare agreement among two or more persons to harm a third person cannot

injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' [para.s] By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to PLAINTIFF recognized by law and is potentially subject to liability for breach of that duty. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.

357)    Although all DEFENDANTS had sworn an Oath to uphold the Constitutions of the United States and the state of Florida .These are not a single or serveral violations of their sworn Oaths this the conspiracy went on for years with dramatic effects on the PLAINTIFF.

358)    PLAINTIFF was unable to find any case regarding Public Officials violating their Oaths so she believes that this could be a case to decide that. No other citizen would be allowed to violate a sworn Oath without serious consequences so why should it be accepted her that the Defendants and other Public Officials should be allowed to act in such a way.

359)    The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to PLAINTIFF from an act or acts done in furtherance of the common design. In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible

as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

**WHEREFORE**, PLAINTIFF prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award PLAINTIFF compensatory and punitive damages against Defendants MCKIRCHY, CRANE and WEBB individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C. That this Court award PLAINTIFF her recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT EIGHT

## ABUSE OF OFFICIAL POWER / VIOLATION OF SUBSTANTIVE DUE PROCESS

PLAINTIFF hereby incorporates, as if fully set forth herein, the allegations contained in the preceding paragraphs 1 through 364 of this complaint & Denial of right to vote 1-69.

360)     JACOBSON, MILLAR, CLAYMAN, FLAGELLO, GOTTLIEB, JORDAN, FISCHER, TAYLOR, WHIPPLE, MCKIRCHY, CRANE and WEBB intentionally and blatantly abused the official power placed upon them in their official capacity.

361)     JACOBSON, MILLAR, CLAYMAN, FLAGELLO, GOTTLIEB, JORDAN, FISCHER, TAYLOR, WHIPPLE, MCKIRCHY, CRANE and WEBB deliberately harassing and obstructing actions are so egregious that they shock the conscience.

362)     JACOBSON, MILLAR, CLAYMAN, FLAGELLO, GOTTLIEB, JORDAN, FISCHER, TAYLOR, WHIPPLE, MCKIRCHY, CRANE and WEBB knew the debilitating nature of the ongoing pattern of their outrageous misconduct described above, and having the power, authority and duty to correct this conduct, willfully, deliberately and with reckless disregard of PLAINTIFF'S Civil Rights, failed to cease action and failed to prevent the harm to PLAINTIFF.

363)     JACOBSON, MILLAR, CLAYMAN, FLAGELLO, GOTTLIEB, JORDAN, FISCHER, TAYLOR, WHIPPLE, MCKIRCHY, CRANE and WEBB, in their individual capacity, have deliberately ignored the illegality and unethical nature of their actions and the actions of others taken against PLAINTIFF, and in doing so and as a direct and proximate result of their intentional acts, each as described herein, PLAINTIFF has suffered damages in connection with the deprivation of her Constitutional and Statutory Rights.

364)     PLAINTIFF'S violations of her rights were based on actual policy of the TOWN and while it was never put in writing it was established by a long course of conduct and harassment of the PLAINTIFF. She supports these allegations by pointing to a series of incidents in which her constitutional right were deprived.

**WHEREFORE**, PLAINTIFF prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award PLAINTIFF compensatory and punitive damages against

Defendants JACOBSON, MILLAR, CLAYMAN, TAYLOR, WHIPPLE, JORDAN,

FLAGELLO, GOTTLIEB, FISCHER MCKIRCHY, CRANE, WEBB, WHITE and

BIGGS individually, to punish those individual Defendants for their unlawful actions and

to deter those individual Defendants and others from engaging in the same or similar acts

in the future.

C. That this Court award PLAINTIFF her recoverable costs together with all other relief

in law and in equity to which he may be entitled.

**Demand for Jury Trial**

PLAINTIFF demands trial by jury on all claims made herein.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st Day of March 2014 I personally filed the

foregoing document with the Clerk of the Court. I also certify that the foregoing

document is being served by mail on all counsel of record as identified on the attached

Service List.

> Isabella Ralston-Charnley
> 3605 South Ocean Blvd.
> 535A
> South Palm Beach, Florida 33480
> PLAINTIFF Pro Se
> Phone (561) 540-8016
> Email: Rollsroyce01@Att.net

Isabella Ralston-Charnley

## SERVICE LIST

JEFFREY L.HOCHMAN, ESQ.
DAMIAN H. ALBERT ESQ.
JOHNSON, ANSELMO, MURDOCH, BURKE,
PIPER & HOCHMAN, PA
2455 East Sunrise Blvd, Suite 1000
Fort Lauderdale, Florida 33304
Telephone: (954) 463-0100
Facsimile:  (954) 463- 2444(
E-Mail: Hochman@jambg.com
E-Mai: Albert@jambg.com


LINDA DECARO
106 S. Forecastle Drive,
Little Egg Harbor, New Jersey 08087 1552
561-588-9009
609-296-8815